JOURNAL ENTRY and OPINION
Defendant-appellant herein, Frank Jenkins (hereinafter Jenkins or appellant), appeals from his conviction on one count of robbery. On September 17, 1998, Jenkins was indicted by the Cuyahoga County Grand Jury on one count of robbery in violation of R.C. 2911.02, a second degree felony, with a repeat violent offender specification, pursuant to R.C. 2929.01(JJ), and a notice of prior conviction, pursuant to R.C. 2929.13(F)(5). Jenkins pled not guilty at his arraignment and maintained his innocence throughout the proceedings.
A jury trial was commenced on March 9, 1999. At trial the state presented the testimony of five eyewitnesses who either witnessed the robbery and/or took part in the pursuit of Jenkins immediately after the robbery. Jenkins presented no witnesses and chose not to testify on his own behalf. On March 11, 1999, the jury found Jenkins guilty of robbery.
The incident in question took place at approximately 11:00 a.m. on the morning of July 6, 1998 near the intersection of Broadway Avenue and Aetna Road in Cleveland's historic Slavic Village neighborhood. The victim, Ann Lindich, had conducted some banking business at Fifth Third Bank and was walking along Broadway toward the Finast supermarket when she was knocked down from behind by an assailant who grabbed her wallet, and in the process tore the pocket right off the shirt Mrs. Lindich was wearing. Mrs. Lindich was 78-years-old at the time of the accident.
Thomas Vanni, a passing motorist, testified that he witnessed the incident from his vehicle and that he pursued the perpetrator in his car as he fled from the scene. Vanni positively identified Jenkins when he was apprehended by police officers near the scene of the crime and also identified him at trial.
Alan Kroeger testified that he was working as a mechanic at his place of business when he heard a commotion and learned that a mugging had just taken place on Broadway. Kroeger immediately headed off in pursuit of the offender. After scouring the premises of a used car lot, Kroeger was alerted to the whereabouts of the assailant by several youths playing at the nearby Morgana Park. Kroeger, after witnessing Jenkins climbing a fence from a neighboring back yard to the park, valiantly chased after Jenkins on foot. Kroeger caught up to Jenkins, collared him, and marched him to the spot where two female officers had responded to a citizen's call for assistance. For reasons unknown, the two female officers became confused by the commotion and allowed Jenkins to sneak back off down the street. Kroeger, realizing the magnitude of the situation, chased Jenkins down a second time and alerted a male officer in a second squad car which had arrived on the scene that Jenkins was the culprit and that he was getting away. This officer swiftly apprehended Jenkins and placed him under arrest after he was identified by several other witnesses in the assembled crowd. Kroeger also identified Jenkins as the attacker at trial.
Brothers Charles and Joe Stafford, ages fourteen and twelve respectively at the time of the incident, witnessed the actual mugging, as well as the entire subsequent chase. The Stafford brothers were playing baseball at Morgana Park when they witnessed the attack. The brothers testified that they did not lose sight of Jenkins from the time that he knocked down Mrs. Lindich to the time that he was apprehended. They each were able to identify Jenkins as the culprit at trial. Both brothers joined in pursuit of the perpetrator and played instrumental roles in the capture. In recognition of their efforts, the brothers were saluted at a dinner sponsored by the Third District Police Community Relations Group and received certificates of commendation.
Mrs. Lindich, understandably still shaken, was initially unable to positively identify Jenkins at the scene, but she did identify him both at the preliminary hearing and at trial.
At sentencing, the appellant was given a three-year term of imprisonment to be served consecutively to a sentence he had received for a parole violation in an unrelated case.
The appellant timely filed the within appeal and presents a total of four assignments of error. The first two assignments of error are interrelated and will be addressed concurrently in this opinion. The first two assignments of error state:
 I. THE STATE FAILED TO POSITIVELY IDENTIFY THE DEFENDANT AS THE ALLEGED PERPETRATOR, BEYOND A REASONABLE DOUBT, AS THE DEFENDANT WAS THE ONLY BLACK MALE IN THE COURTROOM OUTSIDE OF THE JURY BOX AT THE TIME OF THE IDENTIFICATION AT TRIAL.
 II. THE DEFENDANT WAS PREJUDICED BY THE INEFFECTIVE ASSISTANCE OF COUNSEL AS DEFENSE COUNSEL FAILED TO OBJECT TO THE IMPERMISSIBLY SUGGESTIVE IDENTIFICATION OF THE DEFENDANT-APPELLANT WHEN ASSERTING A MOTION TO DISMISS
(SIC) THIS ACTION PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE AND/OR A MOTION IN LIMINE.
The first assignment of error seems to suggest that the state is required to have a line-up of other individuals of similar appearance in court before a witness may identify a defendant at trial. There is, of course, no such requirement. The fact that no other black male was in the courtroom during the period in which five separate witnesses identified the appellant as the man who robbed Mrs. Lindich is simply not relevant.[1] None of these witnesses hesitated or expressed any doubt whatsoever in making their respective identifications. All of the witnesses had already identified Jenkins at the scene of the arrest or, in the case of Mrs. Lindich, at the preliminary hearing.
Before identification testimony may be suppressed, the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. Neil v. Biggers (1972), 409 U.S. 188,93 S.Ct. 375, 34 L.Ed.2d 401. Reliability is the linchpin in determining the admissibility of identification testimony and, even if the identification procedure itself is suggestive, so long as the challenged identification itself is reliable, it is admissible.Manson v. Brathwaite (1977), 432 U.S. 98, 97 S.Ct. 2243,53 L.Ed.2d 140. The factors to be considered in assessing the reliability of an identification include the opportunity of the witness to view the suspect, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at confrontation, and the length of time between the sighting and the confrontation. Neil, supra.
Where a witness has been confronted by a suspect before trial, that witness's identification of the suspect will be suppressed if the confrontation procedure was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances. Manson, supra;State v. Brown (1988), 38 Ohio St.3d 305, 528 N.E.2d 523. The defendant has the burden to show the court that the identification procedures were unnecessarily suggestive. State v. Sims (1984),13 Ohio App.3d 287, 469 N.E.2d 554.
In State v. Halley (1994) 93 Ohio App.3d 71, 76,637 N.E.2d 937, 940, the court stated:
 All identification processes are inherently suggestive. Due process is violated only when the process is so impermissibly suggestive that the identification is unreliable in that there exists a substantial likelihood of irreparable misidentification.
In the instant case, there was no likelihood of an irreparable misidentification at trial and the method of identification was not unnecessarily suggestive. The appellant was observed by several witnesses during the commission of the offense and was apprehended soon thereafter near the scene of the crime. Each of the witnesses testified that Jenkins was easily distinguishable from any other person who happened to be in the neighborhood at the time of the robbery because he was wearing dress shoes with hard soles and no socks on a hot summer day. Alan Kroeger, the auto mechanic who ran Jenkins down, never lost sight of the appellant after observing him jumping a fence into Morgana Park. The Stafford brothers witnessed both the mugging and the entire chase and had no problem identifying Jenkins as the culprit either at the time of the arrest or at trial.
Because the appellant's trial counsel could not have successfully objected to the form of identification at trial, there was also no ineffective assistance of counsel in this regard. These assignments of error are overruled.
The third assignment of error states:
 III. THE DEFENDANT WAS UNFAIRLY DEPRIVED OF HIS RIGHT TO DUE PROCESS UNDER THE LAW AND FURTHER PREJUDICED AS THE STATE FAILED TO PROVE, BEYOND A REASONABLE DOUBT, EACH OF THE ELEMENTS OF ROBBERY AS THEY FAILED TO PROVE THE REQUISITE ELEMENT OF PHYSICAL HARM. THEREFORE, THERE WAS INSUFFICIENT EVIDENCE UPON WHICH TO BASE A CONVICTION OF ROBBERY.
R.C. 2911.02, Robbery, states in relevant part:
 (A) No person, in attempting or committing a theft offense, as defined in Section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another.
As noted in the appellant's brief, the difference between theft and robbery is an element of actual or potential harm to persons.
In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence.
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.
State v. Jenks, supra, paragraph two of the syllabus.
Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.State v. DeHass (1967), 10 Ohio St.2d 230.
In the instant case, Jenkins approached his elderly victim from behind while on the run and used sufficient force to knock her to the ground. One witness observed blood on the face of the victim during the time period in which she was being interviewed by the police. Additionally, in the process of grabbing her wallet, Jenkins tore the pocket completely off of Mrs. Lindich's shirt. Given the nature of the attack and the age of the victim, a much more serious injury could have easily occurred in which case the appellant could have been charged with aggravated robbery under R.C. 2911.01, a felony of the first degree.
Clearly the necessary element of use of, or threat of use of force, was present in this case. Therefore, there was sufficient evidence at trial upon which the jury based its verdict. This assignment of error is overruled.
The appellant's fourth assignment of error states:
 IV. THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial. State ex rel. Squire v. City of Cleveland
(1948), 150 Ohio St. 303, 345.
The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions inTibbs v. Florida (1982), 457 U.S. 31, where the Court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal; i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact.
This court has already concluded in our disposition of the previous assignment of error that there was more than sufficient evidence presented by the state to support the appellant's conviction. The appellant offered no evidence at trial, and none of the evidence proffered by the state tended to indicate that the appellant was not guilty of the crime with which he was charged. Therefore, as a matter of law, the appellant's conviction was not against the manifest weight of the evidence. Thus, this assignment of error is also overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________________ MICHAEL J. CORRIGAN, JUDGE
 KARPINSKI, P.J., and SPELLACY, J, CONCUR.
[1] Jenkins' trial counsel did request that the record show that his client was the only black male in the courtroom outside of the jury box. The trial judge assented to this request.